Filed 2/18/25  P. v. Zamora CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051723 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. WF00306) |
| v. | |
| JOHN ANTHONY ZAMORA, | |
| Defendant and Appellant. | |

In 2010, a jury found defendant John Anthony Zamora guilty of attempted murder, shooting at an occupied vehicle, possession of a firearm by a felon, corporal injury to a cohabitant, kidnapping, and false imprisonment.  The jury found true firearm enhancements and great bodily injury enhancements.  The trial court further found Zamora had served three prior prison terms under Penal Code section 667.5, former subdivision (b).[1]  The court imposed an aggregate sentence of 38 years to life in prison, including three one-year terms for the prior prison term enhancements, and a term of 25 years to life for a firearm enhancement under section 12022.53, subdivision (d).

In 2023, after the Legislature amended section 667.5, subdivision (b), invalidating the prior prison term enhancements that had been imposed on Zamora, the trial court recalled his sentence and resentenced him as required by section 1172.75.  The court struck the three prior prison term enhancements and reduced the aggregate sentence by three years, but the court declined to strike or reduce the firearm sentencing

---

[1] Subsequent undesignated statutory references are to the Penal Code.

enhancement. The court imposed an aggregate term of 35 years to life in prison, including a term of 25 years to life for the firearm enhancement.

Zamora contends the trial court abused its discretion by declining to strike or reduce the firearm sentencing enhancement. He further contends he is entitled to remand for resentencing under section 1172.1.

For the reasons below, we conclude these claims are without merit, and we affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

#### 1. Prior Proceedings

In 2010, a jury found Zamora guilty on seven counts: count 1—attempted murder (§§ 187, 664); count 2—shooting at an occupied vehicle (§ 246); count 3—possession of a firearm by a felon (§ 12021, subd. (a)(1)); count 4—corporal injury to a cohabitant (§ 273.5, subd. (a)); count 5—kidnapping (§ 207, subd. (a)); count 6—false imprisonment (§ 236); and count 7—misdemeanor domestic battery (§ 243, subd. (e)(1)). As to counts 1 and 2, the jury found true firearm and great bodily injury enhancements. (§§ 12022.5, subds. (a) & (d), 12022.53, subds. (b)-(d), 12022.7, subd. (a).) In finding true the enhancement under section 12022.53, subdivision (d), the jury found Zamora had "personally and intentionally discharge[d] a firearm and proximately cause[d] great bodily injury" in the commission of counts 1 and 2. The trial court further found Zamora had served three prior prison terms. (§ 667.5, former subd. (b).)

In 2011, the trial court imposed an aggregate sentence of 38 years to life in prison. The aggregate sentence included three consecutive one-year terms for each of the three prior prison terms, and a term of 25 years to life for the firearm enhancement under section 12022.53, subdivision (d). On direct appeal, this court modified the judgment by striking the conviction on count 6 (false imprisonment) under section 654, and we affirmed the judgment as modified.

2

## 2. Resentencing Proceedings

In 2023, the trial court put the matter on calendar for resentencing and appointed the public defender to represent Zamora. After the Department of Corrections and Rehabilitation produced documents as requested by defense counsel, the court ordered the parties to file briefs on resentencing.

Zamora then filed a brief requesting that he be resentenced under section 1172.75.[2] Zamora asserted that the Secretary of the Department of Corrections and Rehabilitation had identified Zamora as a person serving a sentence that included an invalid enhancement under section 667.5, former subdivision (b).[3] Zamora sought resentencing to dismiss the three one-year prior prison term enhancements, and he requested that the trial court conduct a full resentencing under other various ameliorative changes in the sentencing laws. Zamora argued that the trial court had discretion to strike the 25-to-life sentencing enhancement imposed under section 12022.53, subdivision (d), and impose a lesser firearm enhancement.

The prosecution urged the court not to reduce Zamora's sentence on the grounds that reducing his sentence would endanger public safety and would not "eliminate disparity of sentences" or "promote uniformity of sentencing" under section 1172.75, subdivision (d)(2). The prosecution conceded that the three one-year prior prison term enhancements had been invalidated, but the prosecution argued that the court could

---

[2] Zamora's brief also sought resentencing under section 1172.7 to invalidate a prior drug conviction enhancement, but no such enhancement was imposed in this case, and he does not raise any related claim in this appeal.

[3] The record does not include any such document from the Department of Corrections and Rehabilitation, but the record contains other indications that Zamora was so identified by the Department, and the Attorney General does not dispute that the Department did so. Moreover, the record indisputably establishes Zamora was eligible for resentencing under section 1172.75, which required the Department to provide his identifying information to the sentencing court as a potentially eligible defendant. We will therefore assume the Department did so.

impose a consecutive three-year term that had been stayed by the original sentencing court.

In December 2023, the court issued a written order resentencing Zamora under section 1172.75.[4] The court vacated the three prior prison term enhancements under the amended version of section 667.5, subdivision (b), and the court imposed an aggregate sentence of 35 years to life. The sentence consisted of the upper term of nine years on count 1 (attempted murder); a consecutive term of 25 years to life for the firearm enhancement on count 1; a term of 16 months on count 3 (possession of a firearm by a felon) concurrent with the term on count 1; a consecutive one-year term on count 4 (corporal injury to a cohabitant); and a three-year term on count 5 (kidnapping), concurrent with the term on count 1. The court imposed and stayed the remaining terms under section 654.

## B. Facts of the Offenses

The facts of the offenses are set forth in detail in this court's prior nonpublished opinion on direct appeal. (*People v. Zamora* (Feb. 26, 2013, H037159) [nonpub. opn.].) To summarize, Zamora committed the offenses against his girlfriend, D. Doe, on two separate occasions. In September 2007, Zamora, Doe, and Zamora's mother were sitting in a car with the mother in the driver's seat. Zamora and Doe got into an argument, and Doe got out of the car to leave. Zamora got out, grabbed Doe, threw her into the back seat, and got in with her. Zamora told his mother to drive the car, and he continued to argue with Doe. Zamora hit Doe in the face three times and bit her on the hand.

In April 2008, the couple attempted to reestablish their relationship, and Zamora again became physically abusive towards Doe. On one occasion, he pulled out a gun

---

[4] The abstract of judgment erroneously indicates that the sentence was imposed "at resentencing per recall of commitment (PC 1172.1)." We will order the abstract of judgment corrected to reflect that the sentence was imposed at resentencing pursuant to recall under section 1172.75. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [courts may correct clerical errors at any time].)

4

during an argument. In May 2008, Doe and her brother-in-law were sitting in her car with the doors locked when Zamora approached the car. Zamora pointed a gun into the passenger's side window and demanded to be let into the car. After Doe let him into the car, he commanded her to drive to a friend's home and drop off her brother in law. Eventually Zamora got out of the car, and Doe drove away. As she was driving away, Zamora fired two shots into the car, striking Doe in the wrist.

## II. DISCUSSION

### A. *Imposition of Firearm Sentencing Enhancement*

Zamora contends the trial court abused its discretion by imposing a term of 25 years to life in prison for the firearm enhancement under section 12022.53, subdivision (d) instead of dismissing the enhancement or imposing a lesser firearm enhancement. He argues the court failed to properly apply certain mitigating factors set forth in section 1172.1, subdivision (a)(5) and failed to consider whether a lesser enhancement could protect public safety. The Attorney General contends the trial court's analysis of Zamora's history of violence shows the court did not abuse its discretion in finding that a lesser sentence would endanger public safety.

### 1. *Legal Principles*

In 2019, the Legislature enacted Senate Bill No. 136 (2019-2020 Reg. Sess.), amending section 667.5, subdivision (b) to limit one-year enhancements to prior prison terms served for certain specified sexually violent offenses. The amendment took effect on January 1, 2020 and applied to all nonfinal cases. (Stats. 2019, ch. 590, § 1; *People v. Jennings* (2019) 42 Cal.App.5th 664, 682.)

In 2021, the Legislature enacted Senate Bill No. 483 (2021-2022 Reg. Sess.), adding section 1171.1 to the Penal Code effective January 1, 2022. (Stats. 2021, ch. 728, § 3.) Section 1171.1, subdivision (a) invalidated any sentence enhancement imposed prior to January 1, 2020 under section 667.5, former subdivision (b) except for enhancements imposed for the specified sexually violent offenses. The Legislature then

5

renumbered section 1171.1 as section 1172.75 without substantive change.[5] (Stats. 2022, ch. 58, § 12.)

Section 1172.75 created a mechanism for providing retroactive relief to persons serving a term for a judgment that includes a now-invalid enhancement under section 667.5, former subdivision (b). As relevant here, section 1172.75, subdivision (b) required the Secretary of the Department of Corrections and Rehabilitation to identify persons in their custody serving a term for a judgment that includes a now-invalid enhancement and provide the names of those persons to the sentencing court that imposed the judgments. Subdivision (c) requires the court to review each judgment and verify that it includes a term for the now-invalid enhancement. (§ 1172.75, subd. (c).) Upon verification, the trial court must then recall the sentence and resentence the defendant. (*Ibid.*)

Section 1172.75, subdivision (d) governs resentencing under that section, providing in relevant part: "(d)(1) Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed." As further relevant here, subdivision (d) further provides: "(2) The court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing. [¶] (3) The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future

---

[5] In 2024, the Legislature amended section 1172.75 effective January 1, 2025, making certain individuals ineligible for recall and resentencing. (Stats. 2024, ch. 855, § 1.) The amendment is immaterial to this matter.

violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subds. (d)(2) & (d)(3).)

"[S]ection 1172.75, subdivision (d), vests the superior court with broad discretion based on an inherently factual inquiry." (*People v. Garcia* (2024) 101 Cal.App.5th 848, 856-857.) "[W]e review for an abuse of discretion a superior court's decision under section 1172.75, subdivision (d)(1), that reduction of a defendant's sentence would endanger public safety." (*Id.* at p. 856.)

### 2. The Trial Court Did Not Abuse Its Discretion in Resentencing Zamora

As set forth above, the trial court at sentencing in 2011 imposed three consecutive one-year terms under section 667.5, former subdivision (b) for three prior prison terms Zamora had served. Upon resentencing Zamora, the trial court struck the now-invalid enhancements and reduced Zamora's aggregate sentence by three years accordingly. However, the court declined to strike or reduce the firearm enhancement under section 12022.53, subdivision (d), and the court imposed a term of 25 years to life in prison for that enhancement. Zamora contends the trial court abused its discretion by doing so.

### a. The Reasons Set Forth in the Trial Court's Order

The trial court's written resentencing order sets forth the grounds for its sentencing decisions in some detail. First, the court ruled that under section 1170, subdivision (d), the court had jurisdiction to conduct a full resentencing, allowing for modification of every aspect of the sentence based on applicable ameliorative changes in the sentencing laws enacted after the imposition of the original sentence. The court recognized that, among other ameliorative changes, section 1385 had been amended to add subdivision (c)(2)(C), allowing for the dismissal of an enhancement that could result in a sentence of over 20 years. The court ruled that this would include the firearm enhancement under section 12022.53, subdivision (d). But the court further observed that under *People v. Anderson* (2023) 88 Cal.App.5th 233, the court was only required to dismiss the

7

enhancement "*if*, in exercising its discretion and giving great weight to [the statutory] factors, the court finds dismissal is in the interests of justice or would not endanger public safety." (*Id.* at p. 240.)

The trial court then summarized various facts in the record underlying Zamora's conviction. In addition to the facts summarized above, the court cited the testimony of two witnesses admitted under Evidence Code section 1109: women who had been in prior relationships with Zamora, and who described "significant prior acts of domestic violence" he had inflicted upon them, resulting in a conviction for misdemeanor battery and two felony convictions for inflicting corporal injury upon a cohabitant. The court also stated that it had considered the favorable post-conviction evidence Zamora presented in mitigation. In balancing these factors, the court found, "This mitigation does not outweigh Mr. Zamora's extensive violent and serious criminal history, nor does it address dangerousness to public safety and to his past victims which the court must balance and consider in this resentence." Specifically, in declining to strike or reduce the firearm enhancement, the court found, "[D]ismissal is not in the interests of justice and would endanger public safety, specifically for all three prior victims as well as future potential romantic partners."

### b. The Trial Court's Consideration of Asserted Mitigating Factors

Zamora does not challenge the factual accuracy of any of the trial court's findings. Instead, Zamora asserts the trial court failed to apply several mitigating factors set forth in section 1172.1, subdivision (a)(5)—specifically, his history of childhood trauma, his efforts at rehabilitation, and his substance abuse disorder, which he contends constituted a mental illness as a factor in mitigation. He further argues the court failed to consider "evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice," as required under section 1172.1, subdivision (a)(5).

8

As explained below in section II.B, Zamora fails to show he was entitled to resentencing under section 1172.1, and his counsel below never asserted Zamora was entitled to be sentenced based on the factors set forth in subdivision (a)(5) of that section. Furthermore, section 1172.1, subdivision (a)(5) makes no mention of mental illness as a factor in mitigation. However, the trial court applied section 1385 in selecting a term for the firearm enhancement, and subdivision (c)(2) of that section provides, "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present." The mitigating circumstances enumerated in subparagraphs (A) to (I) include, among others, "(D) The current offense is connected to mental illness." (§ 1385, subd. (c)(2)(D).) Zamora's counsel below asserted that subparagraph applied to him and urged the court to find he had a substance abuse disorder as a mitigating circumstance. Counsel below also asserted Zamora's childhood trauma was a mitigating factor under section 1385, subdivision (c)(2)(E). We address his claim on appeal accordingly.

### c. *Substance Abuse Disorder as a Mitigating Circumstance*

The record contains abundant evidence to support a finding that Zamora was using methamphetamine around the time of the offenses. According to a presentence investigation report from October 2010, "Zamora admitted to having a problem with methamphetamine." The report stated Zamora started smoking methamphetamine when he was 15 years old, and "[h]e described his methamphetamine use as 'crazy.' " The 2010 report further stated, "Approximately two years ago, the defendant was using methamphetamine heavily." Additionally, in 1999, Zamora was arrested and found to be in possession of 33.5 grams of methamphetamine. In August 2007, he suffered a parole violation for methamphetamine use, and in October 2007, he was "arrested for methamphetamine use" among other things.

9

Zamora's counsel below asserted in his resentencing brief that Zamora was addicted to methamphetamine around the time of the offenses. In Zamora's letter to the resentencing court, he wrote that "[a] life of drug use and gangs" led him to have little respect for women and himself. He further stated his "drug habit was the driving force" behind his "ignorance and lack of respect for my self and everyone else."

On appeal, Zamora argues he suffered from substance abuse disorder, and that this disorder constitutes a mental illness for sentencing purposes because it is included in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders. Zamora points out that the court cited his ongoing substance abuse as an aggravating factor, finding that Zamora's "continued interest in controlled substances even while in custody as outlined in the pleadings with a controlled substance conviction reflects a continued nature and danger [*sic*] (possession of hypodermic needle, manufacturing alcohol, and being convicted by the Monterey County Court for possession of drugs with intent to distribute while in custody and receiving a 6-year prison term)." Zamora argues the court erroneously applied evidence of his ongoing substance abuse as an aggravating factor, and that the court should have considered his substance abuse disorder as a mitigating circumstance.

Zamora's claim conflates "substance abuse" as a behavior with having a "substance abuse disorder" as a mental illness. We acknowledge the evidence of his methamphetamine use, but evidence that a person has abused a substance is not by itself proof that the person has a substance abuse disorder.

Section 1385, subdivision (c)(5) defines "mental illness" as "a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders . . . ." That subdivision further provides, "A court may conclude that a defendant's mental illness was connected to the offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment

10

provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense, the court concludes that the defendant's mental illness substantially contributed to the defendant's involvement in the commission of the offense." (§ 1385, subd. (c)(5).)

The Diagnostic and Statistical Manual of Mental Disorders (5th ed. text rev. 2022) (DSM-5-TR) defines " 'an overarching new category of substance use disorders—with the specific substance used defining the specific disorders.' [Citation.]" (*In re N.R.* (2023) 15 Cal.5th 520, 542, fn. omitted.) According to the DSM-5-TR, " 'The essential feature of a substance use disorder is a cluster of cognitive, behavioral, and physiological symptoms indicating that the individual continues using the substance despite significant substance-related problems.' [Citation.] Within the array of substance use disorders described by the DSM-5-TR, stimulant use disorders are characterized as '[a] pattern of amphetamine-type substance, cocaine, or other stimulant use leading to clinically significant impairment or distress, as manifested by at least two' of 11 identified criteria over a 12-month period.' [Citation.]" (*Ibid.,* fn. omitted.) In the context of dependency proceedings, the California Supreme Court observed, "DSM criteria are designed for clinical application and assume the availability of information relevant to a diagnosis. Several of the DSM-5-TR criteria for substance use disorders, such as the presence of cravings, tolerance, and withdrawal symptoms [citation], rely on information that might commonly be divulged by a patient interested in obtaining an accurate diagnosis, but may not be as readily forthcoming from a parent or guardian during the dependency process. Courts therefore may lack the information necessary to apply the DSM criteria in their intended manner." (*Id.* at p. 551.)

Zamora provided no evidence that any qualified medical professional or mental health provider had ever diagnosed him with any substance abuse disorder. To be clear, the trial court was not limited to such sources or expert opinions. Under section 1385,

11

subdivision (c)(5), the court could consider "police reports, preliminary hearing transcripts, witness statements," and other "evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense," provided the evidence was relevant and credible. "By its terms, [section 1385] requires the trial court to consider 'relevant and credible evidence' before it 'may' find that the offense is connected to mental illness." (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1095 (*Ortiz*).) Moreover, trial courts have the discretion to consider a defendant's drug addiction as a mitigating circumstance even if it does not meet the statutory definition of a mental illness. On this record, however, it was within the trial court's discretion not to find Zamora suffered from a mental illness under section 1385 in the form of a substance abuse disorder as defined by the DSM-5-TR.

Furthermore, apart from Zamora's own personal statements, trial counsel offered little or no evidence that a substance abuse disorder "substantially contributed to the defendant's involvement in the commission of the offense[s]." (§ 1385, subd. (c)(5).) Even assuming Zamora was suffering from a substance abuse disorder at the time of the offenses, the record lacks whatever evidence would be necessary to conclude that the trial court erred by failing to consider it as a factor in mitigation. "In the universe of cases where a defendant suffers from mental illness, the strength of the connection between the mental condition and the commission of the current offense will vary widely depending on a host of factors such as the character of the mental illness, the nature of the symptoms exhibited near the time of the offense, the defendant's amenability to treatment, and the nature of the particular offense." (*Ortiz*, *supra*, 87 Cal.App.5th at p. 1097.) The record lacks the degree of evidence about these factors that would compel a court to find a substance abuse disorder contributed to Zamora's involvement in the offenses. The trial court therefore did not err by declining to find a substance abuse disorder as a mitigating circumstance under section 1385, subdivision (c)(5). (See *Ortiz*, at p. 1093 [no error in

12

the trial court's determination that mental illness did not substantially contribute to the commission of the offense notwithstanding defendant's schizophrenia diagnosis].)

### d. *Childhood Trauma as a Mitigating Circumstance*

Zamora contends the trial court failed to consider evidence of his childhood trauma as a mitigating factor in declining to dismiss the firearm enhancement. According to the presentence investigation report of October 2010, Zamora's older sister was killed in a car accident when he was 12 years old. His parents had separated, and he had not had any contact with his father for many years. In his letter to the sentencing court, Zamora wrote, "I did not have any good role models growing up. I seen my father beat my mother and he was not there to teach me what it is to be a man. Back when I committed these crimes I had a warped way of seeing things. I thought the more women I was with the more of a man I was."

When a statute specifies three possible terms of imprisonment for an offense, section 1170, subdivision (b) limits the conditions under which a trial court may impose the upper term. As relevant here, subdivision (b)(6)(A) requires the sentencing court to consider whether the following was a contributing factor in the commission of the offense: "(A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6)(A).)

In selecting the term for count 1, the trial court expressly considered "that the defendant experienced childhood trauma by losing his oldest sister in a car accident when he was 12 and the absence of a most present [*sic*] father who was otherwise abusive and a substance user." The court found that this constituted mitigating circumstances under section 1170, subdivision (b)(6)(A), but in declining to impose the lower term, the court found the mitigating circumstances outweighed by aggravating factors. Specifically, the court found the victim was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(1)); "the defendant has engaged in violent conduct that indicates a serious danger to society"

13

(*id.*, rule 4.421(b)(1)); and "the defendant's prior convictions as an adult since 1999 were numerous and increasing in seriousness" (*id.*, rule 4.421(b)(2)). The court further found that Zamora's record reflected "assaultive crimes before the domestic violence convictions, in between the domestic violence convictions, as well as while he has been in prisons." The court then found the aggravating circumstances outweighed the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice under rule 4.420(e) of the California Rules of Court. On these grounds, the court imposed the upper term of nine years on count 1. Zamora does not dispute that the court's balancing of these factors was within its discretion. (See, e.g., *Ortiz*, 87 Cal.App.5th at p. 1099 [trial court acted within its discretion by determining that a mitigating factor was collectively outweighed by other factors].)

Zamora argues instead that the trial court failed to consider his childhood trauma in deciding whether to dismiss or reduce the firearm enhancement. The mitigating circumstances listed in section 1385, subdivision (c)(2) include, "(E) The current offense is connected to prior victimization or childhood trauma." (§ 1385, subd. (c)(2)(E).) Section 1385, subdivision (c)(6)(A) provides: " 'Childhood trauma' means that as a minor the person experienced physical, emotional, or sexual abuse, physical or emotional neglect. A court may conclude that a defendant's childhood trauma was connected to the offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, medical records, or records or reports by qualified medical experts, the court concludes that the defendant's childhood trauma substantially contributed to the defendant's involvement in the commission of the offense." (§ 1385, subd. (c)(6)(A).)

As noted above, the trial court found Zamora had in fact suffered childhood trauma, and the court considered it a mitigating circumstance in determining the term for count 1. Thus, the court impliedly found childhood trauma was "a contributing factor in the commission of the offense[s]" under section 1170, subdivision (b)(6). This does not

14

necessarily imply, however, that childhood trauma "substantially contributed" to the defendant's involvement in the commission of the offenses under section 1385, subdivision (c)(6)(A). The difference in the plain language between these two provisions—"a contributing factor" versus "*substantially* contributed" (italics added)—implies the Legislature intended for the latter standard to require a stronger connection between the mitigating circumstance and the conduct underlying the offense. Accordingly, a trial court may validly find that the evidence satisfies the former standard while simultaneously finding that the same evidence fails to satisfy the latter. Absent a solid basis in the record to differentiate clearly between the application of these two standards, we cannot conclude a trial court abuses its discretion merely by finding the evidence showed trauma was "a contributing factor" under section 1170 but did not "substantially contribute" to the defendant's involvement in the offenses under section 1385. The magnitude and effects of trauma cannot be precisely measured, and we do not require trial courts to rule with such precision when balancing a multitude of factors in the interests of justice.

The record clearly establishes, however, that the trial court carefully considered Zamora's childhood trauma as a mitigating circumstance. And the court's findings in ruling on the firearm enhancement implied the court found any mitigating circumstances were outweighed by aggravating factors, as the court had expressly stated so in selecting the upper term for count 1. Specifically, in declining to dismiss or reduce the firearm sentencing enhancement, the court found: that the victim had sustained great bodily injury in the form of a gunshot wound to the wrist, which necessitated surgery, a hospital stay, and work disability for approximately three months; that she had been subjected to four years of domestic violence, both emotional and physical, which the court characterized as "extreme"; that the presence of others—including Zamora's mother— "did not deter him in his assaults and control"; that he had subjected prior girlfriends to similar domestic violence; and that "his behaviors increased in dangerousness with time

15

and relationships which culminated into his attempting to murder his girlfriend." On these grounds, the court found dismissal of the enhancement would not be in the interests of justice and would endanger public safety. We perceive no abuse of discretion on this record.

### e. Other Circumstances

Zamora further contends the trial court failed to consider his efforts at rehabilitation and whether the record "reflects that circumstances have changed since the original sentencing [such] that continued incarceration is no longer in the interest of justice." (§ 1172.1, subd. (a)(5).) As Zamora concedes, the court acknowledged his postconviction efforts at rehabilitation, but the court characterized them as insufficient, finding, "There is not an appreciable focus on domestic violence, interpersonal violence and relationship." Zamora does not challenge the factual accuracy of this finding. Regardless, Zamora's reliance on section 1172.1 is misplaced for the reasons set forth in section II.B below.

Finally, Zamora contends the trial court failed to consider whether a lesser firearm enhancement could have protected public safety. The record establishes that the trial court was aware of its sentencing options, including its discretion to impose various terms that could have resulted in a wide range of aggregate sentence lengths. That the court chose to reduce Zamora's sentence by only three years necessarily implies the court determined that any greater reduction was not in the interests of justice and would have endangered public safety. The applicable sentencing laws granted the court the discretion to make that determination without requiring an explanation for why a sentence of 35 years to life is necessary to protect public safety while a sentence that is shorter by one year would be inadequate.

For the reasons above, we conclude the trial court did not abuse its discretion in declining to dismiss or reduce the firearm sentencing enhancement. This claim is therefore without merit.

16

### B. *Resentencing Under Penal Code Section 1172.1*

Zamora contends we must remand the matter for resentencing under section 1172.1 based on recent amendments to that statute. The Attorney General does not respond to this claim, but we reject it for the reasons below.

The current version of section 1172.1, subdivision (a)(1) provides, in relevant part, "When a defendant, upon conviction for a felony offense, has been committed to the custody of the Secretary of the Department of Corrections and Rehabilitation . . . the court may, on its own motion, within 120 days of the date of commitment or at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law, at any time upon the recommendation of the secretary . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence."

The plain language of this subdivision provides for recall and resentencing by a court "on its own motion," or "at any time upon the recommendation of the secretary" and various other authorities. The trial court here did not order recall and resentencing on its own motion; the court order's stated resentencing was mandated by section 1172.75, subdivision (d)(2). And the record does not include any recommendation of resentencing from the Secretary of the Department of Corrections and Rehabilitation or any other authority mentioned in section 1172.1, subdivision (a)(1). Zamora does not identify any other circumstance that would warrant resentencing under section 1172.1 at this time. We conclude no remand for resentencing is warranted.

Furthermore, under section 1172.1, subdivision (c), "A defendant is not entitled to file a petition seeking relief from the court under this section. If a defendant requests consideration for relief under this section, the court is not required to respond." To the

17

extent Zamora's claim on appeal could be considered a request for relief under this subdivision, we decline to grant it.

### III.   DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment by deleting the "X" entered on the second page of both the determinate and indeterminate portions of the abstract of judgment, which erroneously indicates the sentence was imposed "at resentencing per recall of commitment (PC 1172.1)," and the trial court shall correct the abstract to indicate the sentence was imposed "at resentencing per recall under Penal Code section 1172.75."  The trial court shall send a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

_____

Greenwood, P. J.


WE CONCUR:


_____

Danner, J.


_____

Bromberg, J.


H051723 People v. Zamora